UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MC ALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:   7:12-CR-1136-4 |
| | ) | M-13-131 |
| Plaintiff, | ) | |
| | ) | CRIMINAL |
| vs. | ) | |
| | ) | McAllen, Texas |
| RENE GARCIA, | ) | |
| | ) | Thursday, January 31, 2013 |
| Defendant. | ) | (9:24 a.m. to 9:43 a.m.) |

ARRAIGNMENT / DETENTION HEARING

BEFORE THE HONORABLE PETER E. ORMSBY,
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| Appearances: | See next page |
| Interpreter: | Woody Lewis |
| Court Recorder: | Rick Rodriguez |
| Transcribed By: | Exceptional Reporting Services, Inc.<br>P.O. Box 18668<br>Corpus Christi, Texas 78480-8668<br>361 949-2988 |

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER. UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE. General Order 94-15, United States District Court, Southern District of Texas.**

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**APPEARANCES FOR:**

Plaintiff:              STEVEN SCHAMMEL, ESQ.
                        Assistant United States Attorney
                        1701 W. Business Hwy. 83
                        Suite 600
                        McAllen, Texas 78501

Defendant:              ADOLFO AL ALVAREZ, ESQ.
                        4409 N. McColl Rd.
                        McAllen, Texas 78504

INDEX

| GOVERNMENT'S WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| JEAN PAUL RENUAE | 9 | 13 | | |

**COURT'S RULING**   15

1 **McAllen, Texas; Thursday, January 31, 2013; 9:24 a.m.**

2 **(Call to Order)**

3     **THE COURT:** And we're going to call next Criminal
4 Case Number M-12-1136, *United States versus Rene Garcia.*
5     **MR. SCHAMMEL:** The Government is present and ready.
6     **MR. ALVAREZ:** May it please the Court, your Honor,
7 Al Alvarez on behalf of Mr. Garcia. We are also present and
8 ready.
9     **THE COURT:** Okay. If you could please come forward,
10 sir. Okay. We do need to address the arraignment in Mr.
11 Garcia's case. And so let's go ahead and take care of that
12 first.
13     I do need to ask you questions under oath for
14 purposes of your arraignment here this morning. Mr. Garcia, if
15 you would, please, raise your right hand and the Clerk will
16 place you under oath at this time.
17     **(Defendant Sworn)**
18     **THE DEFENDANT:** Yes.
19     **THE COURT:** Okay. And just to confirm we have your
20 name correctly in the Indictment, sir, your correct and
21 complete name is Rene Garcia; is that right?
22     **THE DEFENDANT:** Yes, sir.
23     **THE COURT:** Okay. And Mr. Alvarez, did you have an
24 announcement with regard to the arraignment in his case?
25     **MR. ALVAREZ:** I do, your Honor. Mr. Garcia and I

1  have gone over the Indictment in this case.  He understands the
2  nature of the consequences and the penalties that are available
3  in this particular case.  He is competent to enter a plea of
4  not guilty and he is requesting pretrial and trial dates.
5          **THE COURT:**  Okay.  Thank you.  And Mr. Garcia, I just
6  want to confirm what Mr. Alvarez has said for purposes of your
7  arraignment here today.  And you have been able to review a
8  copy of the Indictment and -- and discuss the charge in the
9  Indictment with your attorney; is that right, sir?
10         **THE DEFENDANT:**  Yes, sir.
11         **THE COURT:**  And I also want to be sure that after
12 reviewing the Indictment and going over that with your attorney
13 that you are able to understand the nature of the charge
14 alleged in the Indictment.  I believe Mr. Garcia is named in
15 just Count Four of this Indictment.  And that you also
16 understand the maximum penalties that could be imposed as to
17 that charge.  And sir, you are able to understand those things;
18 is that right?
19         **THE DEFENDANT:**  Yes, sir.
20         **THE COURT:**  And Mr. Alvarez has indicated that you
21 wish to waive the reading of the Indictment.  All that means is
22 that we won't read it out loud this morning.  And is that
23 correct that you want to waive that?
24         **THE DEFENDANT:**  Yes.
25         **THE COURT:**  And I understand that you wish to plead

1  not guilty.  I just need to have you answer a plea at this
2  point.  And sir, as to the charge in the Indictment, how do you
3  wish to plead at this time, guilty or not guilty?
4          **THE DEFENDANT:**  Not guilty.
5          **THE COURT:**  And I do find based on the representation
6  of counsel that Mr. Garcia is competent for purposes of his
7  arraignment and he's entered a plea of not guilty to the charge
8  being alleged.
9          This case is assigned to Judge Crane.  The Final
10 Pretrial Conference is set for February 28th at 9:00.  The jury
11 selection will be March 5th at 9:30.  The deadline for motions
12 will be February 8.  And the Government's responses will be due
13 February 21st.  The deadline for motions for continuance will
14 be February 14th.  So those dates will control further
15 proceedings in this case.  Your attorney will be able to assist
16 you in addressing this on that schedule.
17         We also need to address the issue of bond as to
18 Mr. Garcia.  There is a presumption against bond that applies
19 in light of the nature of the charge that's being alleged.  I
20 will be taking notice of the factual information in the
21 Pretrial Services Report.  The presumption is rebuttable but it
22 does shift the burden moving forward to the Defendant.
23         Mr. Alvarez, the most difficult thing that seems to
24 me here is that -- is this probation and likely revocation
25 proceedings.  Mr. Garcia does have ties here,

1                 certainly.  Was there evidence or argument you wish
2    --to present at this time?
3         **MR. ALVAREZ:**  Your Honor, I have three witnesses,
4    Yacencia Flores (phonetic), Eduardo Lara and Julian Casas, who
5    are all present in the courtroom.
6         **THE COURT:**  Uh-huh.  Okay.
7         **MR. ALVAREZ:**  If the Court will allow us a short
8    hearing or -- or the Court wants to do it by proffer, it --
9    they're all prepared to testify that my client is bondable,
10   that he is -- has tremendous -- tremendous ties to the
11   community, that they know him, that -- that he would be meet
12   all of his conditions of bail, that he is not a flight risk,
13   and he is not a danger to the community.
14        We feel that with electronic monitoring and a high
15   bond that those would be conditions -- accommodation of
16   conditions that would assure this Court of his presence at all
17   Court proceedings.
18        **THE COURT:**  Okay.  Well I'll certainly accept that
19   each of those gentlemen would testify to that effect.  So as
20   far as -- it's up to you if -- I will accept and take into
21   account the proffer.  Does the Government have any objection to
22   the proffer as far as that's what those --
23        **MR. SCHAMMEL:**  We would just be curious how the
24   people are related to the Defendant.
25        **THE COURT:**  What's that?

1    **MR. SCHAMMEL:**  We were just curious how the people
2 are related to the Defendant.
3    **THE COURT:**  And do you want to go ahead and call
4 them, Mr. Alvarez --
5    **MR. SCHAMMEL:**  Or if --
6    **THE COURT:**  -- or do you want to proffer them?
7    **MR. ALVAREZ:**  Mr. Flores, would you please state your
8 relationship to Rene Garcia?
9    **MR. FLORES:**  I have 11 sisters.  (Indiscernible).
10    **MR. ALVAREZ:**  And Hiro Lara?
11    **MR. LARA:**  I've known him since (indiscernible).
12    **MR. ALVAREZ:**  And Mr. Casas?
13    **MR. CASAS:**  He's a great man.
14    **THE COURT:**  Okay.  All right.  And so I'll take those
15 things into account.  And as far as the Government's position,
16 Mr. Schammel?
17    **MR. SCHAMMEL:**  Your Honor, we -- we've asked the
18 Court to file the Pretrial Services Report.  This is his second
19 go-around with a narcotics case.  He's on probation already.
20 And as the Pretrial Services Report reflects, he is looking at
21 potentially winding up back in custody even on the State case.
22 Having had the prior disposition in the State case, it wasn't
23 sufficient enough to keep him away from problems.  We've asked
24 that he be detained pending trial.
25    **THE COURT:**  And Mr. Schammel, one of the, you know,

1  factors I'm supposed to take into account as the -- the weight
2  of the evidence, we don't want to get into a mini-trial here or
3  anything like that but do you have any proffer or anything on
4  that --
5           **MR. SCHAMMEL:**  Your Honor, I've got the Case Agent
6  here who can give the Court a brief synopsis that -- that would
7  be of assistance.
8           **THE COURT:**  Well it's -- it's more up to you.  That's
9  one of the factors I'm required to consider.  And so if -- if
10 you don't want to add anything about that then I can't take
11 that into account of --
12          **MR. SCHAMMEL:**  The Government would call Special
13 Agent J.P. Renuae.
14          **THE COURT:**  Okay.  We'll address that now.
15          **THE CLERK:**  Please raise your right hand.
16              J.P. RENUAE, GOVERNMENT'S WITNESS, SWORN
17                          DIRECT EXAMINATION
18 **BY MR. SCHAMMEL:**
19 Q    Please state your name for the record.
20 A    Jean Paul Renuae.
21 Q    Who are you employed by?
22 A    United States Homeland Security Investigations in McAllen,
23 Texas as a special agent.
24 Q    How long have you been doing that?
25 A    Approximately four and a half years.

1  Q    How did your investigation on the Defendant Rene Garcia
2  begin?
3  A    It began in July of 2012.
4  Q    And how did that -- how did it start with him?
5  A    On July 2nd, 2012, HSI conducted surveillance in Hargill,
6  Texas.  During that surveillance, Special Agent Kelton Harrison
7  (phonetic) was shot while performing surveillance in regards to
8  a narcotics transaction that we believed was going to occur in
9  Hargill, Texas.
10 Q    And specifically, at what point did the Defendant,
11 Mr. Rene Garcia, become a person involved in this case, to your
12 knowledge?
13 A    The following day, July 3rd, we had information that Mr.
14 Garcia was possibly involved in the shooting for the attempt to
15 transport the narcotics.
16 Q    And so what did you do at that time?
17 A    At that time on the following day, Mr. Garcia was
18 interviewed and then following that interview on July 3rd, we
19 simply began investigating the events as well as all the
20 evidence that we had from the occurrence on July the 3rd -- the
21 morning of, excuse me.
22 Q    And what information led you to believe that Mr. Rene
23 Garcia was involved in the -- was that the conspiracy to
24 possess the narcotics?
25 A    Besides observing Mr. Garcia in Hargill on the night of

1  July the 3rd, several interviews as well as other evidence
2  pointed to the fact that Mr. Garcia and others were attempting
3  to steal a load of marijuana in Hargill.
4  Q    And who were they attempting to steal the marijuana from?
5  A    I'm not sure.
6  Q    Now when they were located in Hargill, how did you -- how
7  did you became aware that they were in Hargill preparing to
8  steal the -- the marijuana?
9  A    Can you rephrase the question?
10 Q    How was -- how was it that you became aware of his actions
11 in the case, what -- what began that?
12 A    Besides the interview of himself as well as other
13 individuals involved in the case, we have several other pieces
14 of evidence that point to Mr. Garcia's involvement not only in
15 the assault of the agent in Hargill but also that their plan
16 was to steal the narcotics.
17 Q    And whose narcotics were they planning to steal?
18 A    I don't have that information.
19 Q    What specifically did this Defendant do to assist the
20 conspiracy?
21 A    This Defendant as well as several other defendants were
22 performing surveillance on a load of marijuana in Hargill,
23 Texas.  Based on the information that we have, they were
24 planning to steal that marijuana once the time was right for
25 them.

1  Q    And what preparations had they made to steal the marijuana
2  besides the surveillance?
3  A    My knowledge is they had done surveillance.  They had
4  recruited individuals to assist the individuals.  Also had a
5  night vision scope so they could perform surveillance during
6  the evening hours.
7  Q    Now did you make additional contact with the Defendant
8  Rene Garcia?
9  A    Following his interview on July 3rd, no, I have not.
10 Q    Okay.  Did you attempt to -- post-Indictment, did you
11 attempt to locate Mr. Rene Garcia?
12 A    We did, yes, sir.
13 Q    And when you located him, what happened?
14 A    Several attempts were made to locate Mr. Garcia for
15 approximately one month.  We were unable to locate him.
16 Finally with the assistance of U.S. Marshals, we did apprehend
17 him on last Friday.
18 Q    And was there any issue at the time of apprehension?
19 A    He did not attempt to flee at the time of apprehension.
20 Q    What specific did he do?
21 A    From my knowledge is he attempted to exit the
22 establishment he was in and attempted to climb a fence and
23 effect his escape.
24 Q    And was this after law enforcement agents identified
25 themselves for the purpose of their presence?

Renuae - Cross / By Mr. Alvarez                13

1  A    Correct, it was.

2         **MR. SCHAMMEL:**  I pass the witness, your Honor.

3                    **CROSS EXAMINATION**

4  **BY MR. ALVAREZ:**

5  Q    Agent Renuae, did you seize 1,000 kilos of marijuana?

6  A    No, sir.

7  Q    Okay.  If you didn't, did you ever see 1,000 kilos of

8  marijuana?

9  A    No, sir.

10 Q    Then how was it that they were going to steal 1,000 kilos

11 of marijuana if no one ever saw it?

12 A    I didn't say no one saw it; I didn't see it.

13 Q    Okay.  Well you're the agent in charge of this case,

14 aren't you?

15 A    Correct.  Yes, sir.

16 Q    Did you see my client shoot any other agent?

17 A    No, sir.

18 Q    Did you find any weapons of my client?

19 A    No, sir.

20 Q    Did anybody involved with these individuals who are

21 charged in the *Alvarado*, did they tell you that my client had

22 shot a weapon?

23 A    No, sir.  Not to my knowledge.

24 Q    Did the agents that were shot, did they tell you that my

25 client was involved in the shooting?

1  A    They did.
2  Q    Okay.  And what exactly -- what was his role in the
3  shootings?
4  A    His role I'm not 100 percent sure on.  Based on the agent
5  that was assaulted, he said the client -- your client, excuse
6  me, was present and tried to pin him in during the assault on
7  Special Agent Harrison.
8  Q    "Pin him in", what does that mean?
9  A    Block his vehicle from proceeding southbound on 493.
10 Q    And what vehicle was he driving?
11 A    A F250, I believe, maroon over tan.
12 Q    He was driving an unmarked vehicle, correct?
13 A    Okay, you're referring to --
14 Q    The agent.
15 A    -- the agent, yes, sir.
16 Q    Were they armed at the time?
17 A    Not to my knowledge.
18 Q    So at what time of night did this happen?
19 A    Approximately 3:00 a.m.
20 Q    So my client, even in that instant, was unarmed, correct?
21 A    I don't know if your client was armed or not.
22 Q    Well you spoke to him.
23 A    Correct.  His statement was he was not armed.
24 Q    Okay.  He -- he told you he wasn't armed, he told you he
25 didn't see any marijuana, he told you he wasn't involved in the

1  conspiracy.  He completely denied any involvement in this
2  instant; isn't that true?
3  A    I have not talked to your client about the marijuana
4  conspiracy.  I don't have the answer to that.
5  Q    Well that's the only thing you're charging him with; isn't
6  that true?
7  A    Correct.  Correct.
8  Q    And you're not charging him with shooting an agent?
9  A    No, sir.
10           **MR. ALVAREZ:**  I pass the witness, your Honor.
11           **THE COURT:**  Okay.
12           **MR. SCHAMMEL:**  Nothing further, your Honor.
13           **THE COURT:**  Okay.  Thank you, sir.
14      **(Witness excused)**
15           **THE COURT:**  Okay.  Anything else that the Government
16  wishes to add, Mr. Schammel?
17           **MR. SCHAMMEL:**  No, your Honor.
18           **THE COURT:**  And Mr. Alvarez, was there anything else
19  before addressing the issue of bond that you wanted to add?
20           **MR. ALVAREZ:**  Not at this time, your Honor.
21           **THE COURT:**  All right.  And as to determining bond,
22  I'm required to apply the factors under the Bail Reform Act.
23           In looking at those, the first factor is the nature
24  and seriousness of the alleged offense.  And Mr. Garcia is
25  named in one count of the Indictment alleging a large amount of

1  -- of marijuana that was involved.  Obviously, the Government
2  is going to need to be able to -- to have sufficient evidence
3  of that one way or another.  And on the weight of the evidence,
4  that's another factor.
5          There does appear to be evidence linking Mr. Garcia
6  to that area at that time and that evening.  Obviously, a lot
7  is going to depend on the credibility of individuals who are
8  implicating him in this alleged attempt to, I guess, steal a --
9  a load of marijuana from someone else as -- as far as what I
10 understood was being suggested there.  So that's -- there is
11 probable cause based on the Grand Jury's finding as to Mr.
12 Garcia.
13         The evidence, I don't believe, points strongly either
14 way here since, you know, I'm just going -- again it's going to
15 be up to -- is going to depend a lot on what the witnesses say
16 as far as Mr. Garcia's involvement there and whether or not
17 that might be accepted by a -- a fact finder.
18         So the other factors are positive factors with regard
19 to Mr. Garcia.  I do note and take into account these witnesses
20 that are here that would testify that he has ties here and that
21 he would make his Court appearances and that they would also
22 suggest that he's not a danger to the community.
23         The Pretrial Services Report reflects positive
24 information in that he is a lifetime resident of the area.  He
25 is a United States citizen.  There's no -- there's no

1   immigration consequences we need to worry about here.

2           He does have a -- family ties here and he has
3   siblings from his -- in his family that are -- he indicates
4   that he remains close to his mother and siblings.  So those are
5   positive circumstances.  He's got at least one child that's, I
6   guess, living with him now in a part of a common law
7   relationship.  He has another child that -- from a prior
8   relationship although he doesn't support there, apparently.

9           He has worked in the past but had been unemployed for
10  some time now.  He couldn't remember the names of the companies
11  that he had worked for previously.  So as far as his employment
12  situation, that's not particularly positive in that he's not
13  working right now and it's hard to tell as far as his
14  employment history what might happen there.

15          The biggest concern, it would be easy to set
16  conditions for -- not easy but easier for sure.  The biggest
17  concern is that he does have a felony marijuana drug conviction
18  from 2008.  He was placed on ten years' probation on that.  The
19  alleged offense in this case occurred while he was on probation
20  from his prior case.

21          In light of that circumstance and taking into account
22  all of the factors, including the positive factors that are
23  present, I do find that an Order of Detention should be
24  entered.  Also, considering the circumstances, where it's
25  difficult for the -- the Government to find and then arrest Mr.

Garcia, but the main problem here really is that he was already on probation from another case.  In other words, he was already under judicial supervision at the time of the alleged offense here.

I've considered that, you know, monitoring and other conditions that we have that -- and we use in -- in some cases but I don't feel that they would be sufficient or appropriate in this particular case given all those circumstances.  So I am going to enter an Order of Detention.

Again, Mr. Garcia, your attorney will be able to help you in going forward with this.  Also if there is any material new information or any change in circumstances, your attorney can move to reopen the hearing.  I mean this is a -- a case where there are positive factors as I indicated.  So if there were something new there, that would be something that may well be or should be considered further in terms of the bond ruling here today.

Was there anything else we ought to take up as to Mr. Garcia here today, Mr. Alvarez?

**MR. ALVAREZ:**  Not at this time, your Honor.

**THE COURT:**  Okay.  Thank you.  You-all can be excused then.

**This proceeding was adjourned at 9:43 a.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____        **March 29, 2013**

       Signed                                              Dated

*TONI HUDSON, TRANSCRIBER*