UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | 7:12-cr-1136-2 |
| | § | |
| ARNOLDO ALVARADO | § | |

_____

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE #1**
_____

Defendant, Arnoldo Alvarado, by and through his attorney, Carlos A. Garcia, respectfully responds to Government's Motion in Limine #1 and states as follows:

### Introduction

1) The case at bar is presently set for Jury selection on March 4, 2014.

2) A Superceding Indictment from the Southern District of Texas was handed down against Arnoldo Alvarado on December 11, 2012

3) The Indictment alleges a two criminal acts alleged to have been committed by the Defendant arising from an incident that occurred in the early morning hours of July 3, 2012.

### Factual Background

4) The Defendant, his sixteen year old brother, and his father Pedro Alvarado were arrested without a warrant on July3, 2012 from their home in Hargill, Texas.

5) Defendant, his brother and father were ordered detained by ICE Group Supervisor Victor Hugas from the Harlingen Office.  Agent Hugas was part of many federal and state officers involved in the investigation of Agent Kelton Harrison's shooting.

6) Defendant was 18 years old at the time of his arrest and was one month from his high school graduation at Johnny Economedes High School in Edinburg, Texas.

7) Defendant, his younger brother, and father were transported to the FBI office in McAllen for interrogation in separate government vehicles.

8) While questioning Defendant Pedro Alvarado, a Texas Ranger (Mankin) was recording with his digital recording device. Said recording has been made part of the file and a transcript of the recording exists. Pedro Alvarado, Agent Hugas and Ranger Mankin traveled for roughly thirty minutes from the Alvarado home to the FBI office in McAllen. During the travel, Agent Hugas expressed his understanding to Defendant, Pedro Alvarado about what he and his boys had done.

9) Agent Hugas said (among other things):

"...People are on edge, people....its hard to know who the good guys are and the bad guys are man."

"Yeah, and well that's the thing man, if there's some kind of misunderstanding, if there is some kind of, you know whatever, and I understand everything you're saying man, because you know I live out in the country like I said too man. ...You know we've got home invasions on my street bro....and I run into a lot of characters that, you know, I got a wife and kids man..."

"I see something suspicious, you know what I mean."

"There's a big difference between a misunderstanding and, you know, somebody going after a, going after a federal agent, you know."

"....my mindset is already like, man if I was this guy in the house, I-I would of...if somebody came in, even if it said police. Man I've already been robbed and shot twice, I'm doing whatever, you know, that's you know, hey..."

"And-and-and-and-if - uh, or whatever, or we can, you know, look at your house, look at what you got-you got there or whatever, I don't think...we-we didn't think you, I don't think this happened on purpose man, don't think I think yeah the car got shot at on purpose, but like you said man, it ain't got lights on the top, it ain't got red and blue, cause you had home invasions before, your wife's been through that, gun point."

"We don't feel you to-to-to-to, like you know me right now man, and I don't - I don't feel like, I don't feel like you pulled a gun and shoot at me, you know I don't feel like that at all.  What I do feel, and so would I, and so would him, so would anybody man, if I think I'm protected, my home protected, my family, from somebody that wants to do them harm, I wouldn't hesitate bro. I-I would not hesitate, and-and you know 99.99% of cops would understand that.  You understand what I'm saying? And-and-and this, you know, it ain't - it's not a Hidalgo County Sheriff and a marked unit, like what's behind us, we're in Hidalgo County, you know what - you understand what I'm saying?"

10) After the incident of July 3, 2012, Agent Harrison wrote his supervisors and the Office of Inspector General to complain about the management, lack of oversight, lack of planning, and lack of coordination before surveillance operations were implemented.

11) The Office of Inspector General sent a team to conduct an investigation and interviewed Agent Harrison and other involved in the operations the night of July 2, 2014 including his supervisor.

12) Agent Harrison makes many critical statements (written and recorded)  about the operations as conducted by the McAllen ICE Office.  Agent Harrison asks that changes

be made so that incidents like this do not happen again.

## Prayer

13) The factual evidence the Government seeks to suppress is highly relevant to a just and fair trial in this case. This incident did not occur in a vacuum and the factual evidence sought to be suppressed from the jury is highly probative of the officers' state of mind, modus operandi and methods of investigation. Under the Federal Rules of Evidence, the statements sought to be suppressed by the government should be allowed as substantive, admissible evidence.

Respectfully Submitted,

By: /s/ Carlos A. García
Carlos A. García
State Bar No. 24048934
Federal Bar No.: 589236
1305 East Griffin Parkway
Mission, Texas 78572
Tel. (956) 584-1448
Fax: (956) 584-7402

## CERTIFICATE OF SERVICE

I, Carlos A. García, hereby certify that on March 2, 2014 a true and correct copy of the above and foregoing Motion was forwarded to Assistant United States Attorney in charge of this case, via electronic mail.

/s/Carlos A. García
Carlos A. García